UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARACELY GUERRERO,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>Defendant. | 1:12-cv-1100 GSA<br><br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**INTRODUCTION**

Plaintiff Aracely Guerrero seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Disability Insurance Benefits under Title II of the Social Security Act and for Supplemental Security Income payments under Title XVI of the Social Security Act.[1]  The matter is pending before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[2]

///

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

[2] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Docs. 8 & 9.

1

**THE ADMINISTRATIVE PROCEEDINGS**

**1. Procedural History**

On October 22, 2008, Plaintiff filed an application for disability insurance benefits and for Supplemental Security Income payments, alleging disability beginning October 5, 2008.  AR 144-150.[3]  Plaintiff's application was denied initially and on reconsideration; Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  AR 80-84; 86-90; 91-92.  ALJ Michael Haubner held a video hearing, and issued a decision on January 7, 2011, finding Plaintiff was not disabled and denying benefits.  AR 13-22.  On March 22, 2012, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  AR 4-8.

**2. The Disability Determination Standard and Process**

A claimant is "disabled" for purposes of entitlement to disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A); 42 U.S.C. § 423(d)(1)(A); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

The Commissioner utilizes a "five-step sequential evaluation process" to assess whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a)-(f); *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  At step one, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(i).  If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic

---

[3] References to the Administrative Record are designated as "AR," followed by the appropriate page number.

work activities; if not, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or medically equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform her past work; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving that she is unable to perform past relevant work (*i.e.*, in steps one through four of the analysis). *Drouin*, 966 F.2d at 1257; *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). If the claimant meets that burden, a *prima facie* case of disability is established. *Id*. In that event, or if the claimant has no past relevant work, the Commissioner then, in the fifth and final step of the sequential analysis, bears the burden of establishing that the claimant is not disabled because she can perform other substantial, gainful work available in the national economy. § 404.120(a)(4)(v); *Lester*, 81 F.3d at 828 n. 5; *Drouin*, 966 F.2d at 1257.

### 3. The ALJ's Findings and Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 13-22. More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 5, 2008, the alleged disability onset date. AR 15. Further, the ALJ identified chronic post-traumatic low back pain; degenerative disc disease with annular tear; moderate obesity; and probable cervical

3

spine sprain/strain as severe impairments.[4]  AR 15.  Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 16.

Based on a review of the entire record, the ALJ determined that Plaintiff has the RFC "to lift and carry 50 pounds occasionally and 25 pounds frequently, and she can stand, sit, and walk up to 6 hours in an 8-hour workday."  AR 16.  The ALJ noted that Plaintiff "should avoid frequent bending and stooping."  AR 16.  The ALJ further found that Plaintiff was "capable of performing her past relevant work as a hotel housekeeper, cashier, receptionist, and retail store manager."  AR 20.  The ALJ also determined, after consulting the Medical-Vocational Rules, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the grids") and considering additional testimony from the vocational expert, that Plaintiff was able to perform other jobs that exist in significant numbers in the national economy, such as laundry laborer, laundry worker II, and hand packager.[5]  AR 21-22.  The ALJ concluded that the Plaintiff "has not been under a disability, as defined in the Social Security Act, from October 5, 2008, through the date of this decision."  AR 22.

Plaintiff now argues that the ALJ's decision is not supported by substantial evidence because (1) the ALJ improperly found that Plaintiff did not suffer from a severe mental impairment, and (2) the ALJ improperly evaluated the medical evidence in assessing Plaintiff's physical RFC.  Plaintiff further argues that the ALJ's decision contains legal error because the ALJ improperly rejected Plaintiff's subjective symptom testimony.  More specifically, Plaintiff contends that that the ALJ erred in not giving specific and convincing reasons for rejecting Plaintiff's testimony regarding her pain and other limitations.  Doc. 14, pp. 6-13.

---

[4] The ALJ also found that Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in [her] ability to perform basic work activities . . . and is therefore nonsevere."

[5] Since Plaintiff was born on September 5, 1976 and was 32 years old on the alleged disability onset date, Plaintiff is defined as a younger individual aged 18-49 and application of the grids was appropriate.  20 C.F.R. §§ 404.1563, 416.963; AR 21.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

**DISCUSSION**

**1. The ALJ Correctly Found Plaintiff's Mental Impairment to be Non-Severe**

Plaintiff argues that the ALJ's determination that Plaintiff did not suffer from a severe "mental impairment" was not supported by substantial evidence. Doc. 14, pp. 6-7. The Commissioner contends that Plaintiff's argument lacks merit. Specifically, the Commissioner contends that Plaintiff fails to identify what her mental impairment is; that the evidence in the record supports a finding that any mental impairment was not severe; and that given that the ALJ considered evidence regarding Plaintiff's mental impairment in assessing Plaintiff's RFC, any error by the ALJ in finding it not severe was harmless. Doc. 17, pp. 8-9.

*A. Applicable Law*

At step two of the five-step sequential disability inquiry, the Commissioner determines "whether medical evidence establishes an impairment or combination of impairments of such severity as to be the basis of a finding of inability to engage in any SGA."[6] SSR 85-28, 1985 WL

---

[6] SGA stands for "substantial gainful activity."

568556 (1985) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). Under Social Security regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [an individual's] physical or mental ability to do basic work activities."[7] 20 C.F.R. §§ 404.1521(a), 416.921(a). Social Security Ruling ("SSR") 85-28 further clarifies that an impairment or combination of impairments is "not severe" when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities *which would have no more than a minimal effect on an individual's ability to work* even if the individual's age, education, or work experience were specifically considered." SSR 85-28, 1985 WL 568556 (1985) (emphasis added); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28); *Thune v. Astrue*, 499 Fed.Appx. 701, 703 (2012) (an impairment can be found "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work). Put differently, the step two severity inquiry is a "de minimus screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (1996).

### B. Analysis

At step two of the sequential disability analysis, the ALJ found that Plaintiff had several severe impairments: chronic post-traumatic low back pain; L5/S1 degenerative disc disease with annular tear; moderate obesity; and probable cervical spine sprain/strain. The ALJ further determined that Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities . . . and is therefore nonsevere." As discussed below, the ALJ's determination is based

---

[7] Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," including physical functions (such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling); capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 140.1521(b), 416.921(b).

on substantial evidence in the record.

First, Plaintiff did not receive a diagnosis of, or treatment for, depression or any other mental health impairment from a treating mental health specialist. AR 266, 268. Plaintiff's primary care providers had prescribed Zoloft, an antidepressant, to Plaintiff, to alleviate depressive symptoms that she had experienced.[8] AR 266, 269, 353. However, as the ALJ noted, the fact that Plaintiff's primary care physician did not refer her to a psychologist or psychiatrist suggests that Plaintiff's symptoms of depression and anxiety were not sufficiently disruptive as to warrant a referral for specialist diagnosis and treatment. AR 15. Plaintiff's primary care physician also did not note any functional limitations arising from her mental symptoms. AR 338-364; *see Thune v. Astrue*, 499 Fed.Appx. 701, 703 (9th Cir. 2012) (upholding ALJ's determination that claimant's depression was "not severe" when treating physician recorded in treatment notes that she was depressed and prescribed her anti-depressants but did not identify any functional limitations resulting from his diagnosis).

Second, the consultative examining psychologist, Dr. Greg Hirokawa, Ph.D., also found that Plaintiff symptoms were "in the mild range." AR 268. Dr. Hirokawa conducted a "comprehensive psychiatric evaluation" of Plaintiff on December 14, 2008. AR 265. Plaintiff reported feelings of depression and anxiety to Dr. Hirokawa. AR 265. Dr. Hirokawa diagnosed Plaintiff with "[a]djustment disorder with mixed emotional features;" he assessed her Global Assessment of Functioning ("GAF") score at 61 ("current" as well as "within the last year");[9] he

---

[8] Plaintiff's medical records from the Polyclinic Medical Center, Inc., in Bakersfield, indicate that Plaintiff had complained of depression and given a diagnosis of depression in the course of receiving general medical care. However, the records fail to specify with any clarity the identity and qualifications of the medical personnel who provided the care and recorded the progress notes at issue. AR 338-364.

[9] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). A GAF score of 61-70 translates to "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) *or* some difficulty in social, occupational, or school functioning (e.g., occupational truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., Text Revised, p. 32.

noted that Plaintiff's "stressors" were her "[e]conomic and health problems;" and he concluded that overall Plaintiff's "symptoms of depression and anxiety appear to be in the mild range and primarily due to her physical problems." AR 268.

Dr. Hirokawa also conducted a "functional assessment" of Plaintiff based on her "psychiatric condition." AR 269. Dr. Hirokawa made the following functional determinations:

> The claimant is capable of managing her funds. Her ability to remember location and work-like procedures is *mildly* limited. The claimant's ability to understand, remember, and carry out very short and simple instructions is *mildly* limited. Her ability to understand and remember detailed instructions is *mildly* limited. The claimant's ability to maintain attention and concentration for extended periods is *mildly* limited. Her ability to accept instructions from a supervisor and respond appropriately to criticism is *mildly* limited. Her ability to perform activities within a schedule, maintain regular attendance, and be punctual is *mildly* limited. The claimant's ability to sustain an ordinary routine without special supervision is *mildly* limited. The claimant's ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace is *mildly* limited. The claimant's ability to interact with coworkers is *mildly* limited. Her ability to deal with the various changes in the work setting is *mildly* limited. Her ability to deal with stress *is mildly to moderate* [sic] limited. The likelihood of the claimant emotionally deteriorating in a work environment is *minimal*.

AR 269 (emphases added). Dr. Hirokawa was the only doctor to assess Plaintiff's psychiatric limitations, and, with the exception of Plaintiff's ability to deal with stress (which he found was mildly to moderately limited), he found that Plaintiff was only mildly limited as to a wide range of basic work activities (comprising a total of eleven distinct categories). Moreover, he assigned her a GAF score of 61, which is indicative of only mild symptoms. Dr. Hirokawa's ultimate conclusion regarding Plaintiff's functional limitations was that the "likelihood" of Plaintiff "emotionally deteriorating in a work environment is minimal." AR 268-269. Dr. Hirokawa's overall assessment and functional findings support the ALJ's determination that Plaintiff's depression was not severe. *See Parks v. Astrue*, 304 Fed.Appx. 503, 506 (9th Cir. 2008)

(upholding ALJ's finding that claimant's impairment of "major depression," diagnosed and treated by mental health specialists was not severe, given that the state agency examining psychologist found only "mild functional limitations" and a "fair to good" prognosis).

Next, the California Department of Disability Services reviewing physician, Dr. Kevin Gregg, who completed a Psychiatric Review Technique form for Plaintiff, also found that Plaintiff's medical impairment was "not severe."[10] AR 274; *see* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ's decision contains a proper step two analysis of Dr. Gregg's Psychiatric Review Technique findings, to which the ALJ gave "substantial weight." AR 16, 19; *see* 20 C.F.R.§§ 404.1520a(e) and 416.920a(e) (the ALJ's written decision must incorporate "pertinent findings and conclusions based on the technique" and "must include a specific finding as to the degree of limitation in each of the functional areas"); *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721 (9th Cir. 2011) (the ALJ's decision must document application of the technique at step two of the disability analysis). When a mental impairment is at issue, the regulations require a state agency reviewing physician to rate the claimant's functional limitations in four broad areas (activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation). The ALJ's written decision must then address the reviewing physician's findings in relation to his determination at step two of the analysis. SSR 96-8p, 1996 WL 374184;[11] 20 C.F.R. §§ 404.1520a(c)(3) and (e), 416.920a(c)(3) and (e). If the

---

[10] Dr. Gregg's findings were reviewed by state agency reviewing physician Dr. M. Nawar, and state agency reviewing psychologist Dr. P.Y. Klein, who "affirmed" Dr. Gregg's findings "as written." AR 315-316.
[11] SSR 96-8p provides:

> The psychiatric review technique described in 20 C.F.R. 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment

degree of functional limitations in the first three functional areas is rated as "none" or "mild" and "none" in the fourth area, the impairment is generally considered not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).  Dr. Gregg's specific findings include: mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.  AR 282.  These findings are consistent with a determination at step two that Plaintiff's mental impairment was "not severe."  *See Fisher v. Astrue*, 788 F. Supp. 2d 1219, 1230 (E.D. Wash. 2011).

In sum, there is substantial evidence in the record to support the ALJ's step two finding that Plaintiff's medically determinable mental impairment of depression was not severe.  The ALJ's decision is, therefore, proper.

Even assuming, *arguendo*, that the ALJ erred in finding Plaintiff's mental impairment to be not severe, any error is harmless because the ALJ considered Plaintiff's mental impairment at step four of the analysis.  *See, e.g., Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that where the ALJ considered evidence of limitations posed by claimant's bursitis at step four of the disability analysis, any error in failing to consider bursitis "severe" at step two was harmless); *Zettelmier v. Astrue*, 387 Fed. Appx. 729, 731 (9th Cir. 2010) ("even assuming that the ALJ erred by failing to conclude that Zettelmier's depression or back pain were severe at Step Two, such error was harmless because the ALJ addressed these conditions in connection with the assessment of Zettelmier's residual functional capacity at Step Four;" *Bickell v. Astrue*, 343 Fed.Appx. 275 (9th Cir. 2009) (where ALJ found

used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

non-severe impairments at step two but nonetheless considered them at steps four and five, any error was harmless).

Here, the ALJ specifically noted that he considered Plaintiff's mental limitations at steps four and five. AR 16. In doing so, he gave substantial weight to the state agency opinion that Plaintiff's mental impairments are non-severe. He noted that Plaintiff had not been referred for mental health treatment, and her primary physician had provided her with medication for her symptoms. Finally, he noted that the consultative psychologist estimated her GAF score at 61, which is indicative of only mild symptoms. Thus, the ALJ considered the entire medical record at step four. His decision that Plaintiff's mental impairment was mild and did not affect her RFC is supported by substantial evidence. Accordingly, any error at step two would be harmless.[12]

### 2. The ALJ Correctly Assessed Plaintiff's RFC

The ALJ found that Plaintiff had the RFC to lift and carry 50 pounds occasionally and 25 pounds frequently, and to stand, walk and sit for 6 hours in an 8-hour day; he further found that Plaintiff should avoid frequent bending and stooping. AR 16. As Plaintiff states in her Opening Brief, "[t]he ALJ's assessment mirrors that of Dr. [Juliane] Tran," the consultative examiner. Doc. 14, p. 7; AR 270-273. Plaintiff, however, argues that Dr. Tran's opinion does "not constitute substantial evidence to support the ALJ's decision because she reviewed no medical records." Doc. 14, p. 8. Plaintiff further argues that the findings of Dr. Leramo, a neurosurgeon Plaintiff consulted one time, taken together with her obesity, are inconsistent with the ALJ's RFC

---

[12] For the first time, in her Reply Brief, Plaintiff raised the argument that the ALJ erred in not providing specific and legitimate reasons for ostensibly rejecting Dr. Hirokawa's finding that Plaintiff was mildly to moderately limited in her ability to handle stress. The Court notes that it is improper for a party to raise an argument for the first time in a reply brief. Plaintiff specifically argues that the ALJ should have specifically addressed this point in Dr. Hirokawa's opinion, i.e., his finding of mild to moderate limitation in the category of "ability to handle stress," because this finding contradicts the opinion of the state agency reviewing physician, Dr. Gregg, who opined that Plaintiff's mental impairment was not severe. AR 19. A review of Dr. Hirokawa's report, however, reveals no substantive contradiction between his findings and those of Dr. Gregg. Dr. Hirokawa's overall assessment was that "Plaintiff's symptoms appear to be in the mild range and primarily due to her physical problems and associated limitations." AR 268. Further, Dr. Hirokawa's conclusion, after consideration of all of Plaintiff's functional limitations, was that "[t]he likelihood of the claimant emotionally deteriorating in a work environment is minimal." AR 269.

assessment.  Doc. 14, p. 9.  Finally, Plaintiff argues that the ALJ should have "recontact[ed] Dr. Leramo to seek clarification or additional information regarding [Plaintiff's] limitations."  Doc. 14, p. 9.

### A.   Analysis

While Plaintiff argues that "Dr. Tran reviewed no medical records," she fails to identify which relevant records Dr. Tran should have reviewed and how the purported failure to review particular records prejudiced Plaintiff's consultative examination.  20 C.F.R. § 404.1517 specifies that when the Commissioner arranges for an examination of a claimant, the examiner will be provided "any necessary background information about [the claimant's] condition."  Here, Plaintiff's medical records relating to her back problem reflect generally unremarkable findings, and Dr. Tran noted that she had reviewed a progress note specifying that the Plaintiff had "degenerative joint disease of the back with back pain."[13]  Dr. Tran, a Board-certified "physical medicine and rehabilitation" specialist, took a detailed medical history from Plaintiff and conducted a "comprehensive orthopedic evaluation" of Plaintiff.  AR 270-273; *see Castaneda v. Astrue,* 344 F.App'x 396, 398 (9th Cir. 2009); *Anderson v. Astrue,*  2009 WL 3297247 (W.D. Wash. Oct. 14, 2009); *Fortes v. Astrue*, 2009 WL 734161, *3 (S.D. Cal. Mar. 18, 2009) (ALJ did on err in relying on an RFC assessment by a consultative examiner who did not review medical records because the consultative examiner "talked to Plaintiff about the history of her illness and

---

[13] The record before the ALJ contained medical records from Bakersfield Neuroscience and Spine Institute, dated April 1, 2009 to August 6, 2009; a radiology report (MRI) from Truxton Radiology, dated February 26, 2009; radiology reports (x-ray) from Truxton radiology, dated October 5, 2008 and October 31, 2008; and a "physician assessment record" from Professional Urgent Care Center, dated October 5, 2008.  AR 327-336; AR 367-368; AR 250, 297; AR 251-252.  Dr. Leramo, a neurosurgeon Plaintiff consulted at the Bakersfield Neuroscience and Spine Institute recommended a laminectomy and a physician at the Professional Urgent Care Center noted "moderate paraspinal tenderness and spasms."  For the most part, however, the records document mild findings.

The record also contains other potentially relevant records for purposes of Dr. Tran's evaluation: a report from Kern Radiology Medical Group, Inc., dated January 30, 2004 (documenting only "very mild" and "normal" findings); a report from Jacobo Physical Therapy, Inc. dated May, 17, 2004, stating that plaintiff received back injections for back pain and recommending physical therapy for 4 weeks); and 2 progress notes from CBCC Pain Medicine and Surgery Center dated January 6, 2004 and May 18, 2004 (documenting that Plaintiff suffers from degenerative disc disease and neck pain, and received lumbar epidural steroid injections).  AR 318; 320; 322-323.

performed his own orthopedic examination, cervical spine examination, lumbar spine examination, extremity examination and neurological examination"). AR 270. Therefore, Dr. Tran had a legitimate basis for her opinion and the ALJ did not err in giving weight to that opinion.

In making his RFC assessment, the ALJ noted: "I considered the findings and opinion of Dr. Tran in making this decision and afforded it considerable weight. The doctor performed a thorough and well-documented examination, and her opinion is more consistent with the overall evidence [relative to the opinions of the state agency reviewing physicians, who found Plaintiff's physical impairments to be not severe].[14] In addition, Dr. Tran is Board-certified in physical medicine and rehabilitation, which gives her opinion greater weight." AR 18. The ALJ's RFC assessment for Plaintiff is entirely consistent with Dr. Tran's findings, and is therefore supported by substantial evidence. AR 16; AR 273; *see Tonapetyan v. Halter,* 242 F.3d 1144, 1149 ("[examining physician's] opinion alone constitutes substantial evidence, because it rests on his own independent examination of [a claimant]"); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) ("when an examining physician provides independent clinical findings … such findings are substantial evidence").

Plaintiff contends that the ALJ's RFC assessment is inconsistent with the findings of Dr. Leramo, and that the ALJ should have "recontact[ed]" Dr. Leramo for additional information regarding Plaintiff's limitations. Dr. Leramo is a neurosurgeon, whom Plaintiff consulted one time to ascertain whether surgery was indicated in her case. AR 331-336. Dr. Leramo noted that Plaintiff was in "mild distress from low back pain," was "moderately obese," and had a "severely

---

[14] State agency reviewing physician Dr. A.M. Khong reviewed the record on January 6, 2009, and opined that Plaintiff had no severe physical impairment. AR 287. State agency reviewing physician, Dr. M. Nawar, reviewed the record on May 28, 2009, and opined that any severity in Plaintiff's condition would be temporary if her "motor and sensory" are still intact. Dr. Nawar opined that he would "affirm" Dr. Khong's opinion "as written." AR 315. The ALJ rejected these opinions, finding that Dr. Tran's opinion was "more consistent with the overall evidence."

antalgic" gait. AR 332. Dr. Leramo did not assess any functional limitations at all; he simply opined that Plaintiff was a candidate for a laminectomy, and referred her to another neurosurgeon in his practice for "possible surgical intervention."[15] AR 331-333. Since Dr. Leramo did not assess any functional limitations, the ALJ's RFC assessment was not inconsistent with Dr. Leramo's findings.

Plaintiff adds that Dr. Leramo was the more appropriate specialist compared to Dr. Tran (who is a specialist in physical medicine and rehabilitation), and, hence, the ALJ should have given greater weight to Dr. Leramo's opinion. Plaintiff, however, provides no legal authority or any persuasive reason as to why Dr. Leramo's status as a neurosurgical specialist, whom Plaintiff consulted one time, would entitle his opinion greater weight than the opinion of Dr. Tran, who performed a "comprehensive orthopedic evaluation" of Plaintiff for the purpose of assessing her functional limitations. While Dr. Leramo may have been an appropriate specialist to assess the feasibility of surgery for Plaintiff, that does not mean that Dr. Tran did not have the most appropriate specialist qualifications to conduct a comprehensive evaluation of Plaintiff for purposes of assessing her functional limitations. Plaintiff's argument to the contrary is unpersuasive.

As for Plaintiff's next argument that the ALJ had "an affirmative duty to recontact Dr. Leramo to seek clarification or additional information regarding her limitations," it is similarly unpersuasive. Plaintiff bears the burden of providing evidence to prove that her impairments limit her functioning to the point of disability. 42 U.S.C. § 423(d)(5)(A), 20 C.F.R. § 404.1512(c).[16] Nonetheless, "[i]n Social Security cases, the ALJ has a special duty to develop the

---

[15] Dr. Leramo recommended an "L5 laminectomy with L5-S1 excision with instrumentation." AR 333. Plaintiff testified she did not follow through because she did not have any help for the recovery period. AR 53-54.

[16] 42 U.S.C. § 423(d)(5)(A) provides that a claimant will not be considered to be under a disability unless he or she furnishes medical and other evidence of the existence thereof; 20 C.F.R. § 404.1512(c) provides "[a claimant] must provide evidence ... showing how [the alleged] impairment(s) affects ... [his or her] functioning[.]"

record fully and fairly and to ensure that the claimant's interests are considered." *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 2003). The ALJ's duty to develop the record further is triggered, however, only by ambiguous evidence, the ALJ's own finding that the record is inadequate, or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *also see Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (the ALJ has a duty to develop the record or "conduct an appropriate inquiry" when the evidence is ambiguous or the ALJ finds the record is not sufficient for him to evaluate the evidence and make a determination as to Plaintiff's alleged disability). Here, the record was sufficient for purposes of evaluating the evidence and making a disability determination as there was no ambiguity regarding Plaintiff's functional limitations. The ALJ properly relied on Dr. Tran's findings as to Plaintiff's functional limitations, based on her independent examination of Plaintiff.

### 3. The ALJ Properly Discounted Plaintiff's Subjective Symptom Testimony

The ALJ found that Plaintiff was "not entirely credible" and gave her subjective complaints "no weight." AR 19-20. Plaintiff argues the ALJ improperly discredited Plaintiff's "subjective symptom testimony" by failing to provide legally sufficient reasons for rejecting such evidence. Doc. 14, pp. 9-10. The Commissioner responds that "the ALJ provided a valid basis for not fully crediting Plaintiff's allegations, and his reasons are supported by substantial evidence." Doc. 17, p. 14.

Plaintiff testified that she could lift and carry four pounds; stand for fifteen minutes at a time; sit for twenty minutes at a time; walk for ten to fifteen minutes at a time; pay attention for thirty minutes at a time;[17] grip or grasp an object for no more than two minutes, after which she needed to rest her hands for five to ten minutes; needed to keep her feet elevated or lie down for

---

[17] Plaintiff initially testified that she could pay attention for twenty to thirty minutes at a time. When the ALJ asked her to be more specific, Plaintiff testified she could pay attention for thirty minutes at a time. AR 35.

15

four hours in an eight hour day; was limited as to bending and standing on her toes; followed her treatment recommendations and took her medications; had not been referred to see a psychiatrist or psychologist by her primary care providers; and had been advised by her doctors to lose weight. AR 34-37. Plaintiff testified that she needs to lie down and elevate her feet because of pain in her shoulder blades, lower back and legs, although fifty percent of the time medication "cuts [the pain] down." AR 55. Plaintiff further testified that she lives with four children ranging in age from four years old to seventeen years old; the four year old stays with her while the other children are in school; she drives four to five times a week; she cooks twice a day; does the dishes once a day; helps her children with homework three to four times a week; does laundry once or twice a week; does grocery shopping every two weeks; does additional shopping once a month; goes out to eat once a month; needs help dressing herself; does not make her bed; does not do much cleaning except for dusting; does not watch television; only uses the home computer to pay bills (four times a month); and does not exercise although her doctors have told her to do so. AR 34-37; 41-46; 55.

### A.   Applicable Law

"Generally a claimant's credibility becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (2001). "For this reason, the ALJ may not reject the claimant's statements regarding her limitations *merely* because they are not supported by objective evidence." *Id.* (citation omitted) (emphasis added). "Neither may the ALJ rely on his own observations of the claimant at the hearing as the *sole* reason for rejecting the claimant's complaints." *Id.* at 1149 (emphasis added). Nonetheless, in assessing the claimant's credibility, the ALJ may use "ordinary techniques of credibility evaluation," considering factors such a lack of cooperation during consultative

examinations, a tendency to exaggerate, inconsistent statements, an unexplained failure to seek treatment, inconsistencies between the testimony and conduct; and inconsistencies between daily activities and the alleged symptoms. *Id.* at 6; *also see Smolen v. Chater*, 80 F.3d 1273, 1284 (1996); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). In evaluating the credibility of symptom testimony, the ALJ must also consider the factors set out in SSR 88-13, including the claimant's work record and physicians' observations regarding the nature, intensity and effect of the alleged symptoms. *See* SSR 88-13; *Smolen*, 80 F.3d at 1284; *Barnhart*, 278 F.3d at 959. Finally, "[i]f the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Barnhart*, 278 F.3d at 958. In other words, the ALJ "must give specific, convincing reasons for rejecting a claimant's subjective statements." *Tonapetyan*, 242 F.3d at 1149. If the ALJ's credibility finding is supported by substantial evidence in the record, courts "may not engage in second-guessing." *Barnhart*, 278 F.3d at 959.

### B. Analysis

In discrediting Plaintiff's testimony here, the ALJ cited her lack of cooperation during her consultative examination with Dr. Tran, her tendency to exaggerate, her spotty work history, and her daily activities. The ALJ gave a detailed explanation supporting each of these reasons, all of which are specific and convincing and based on substantial evidence in the record.

To illustrate Plaintiff's lack of cooperation during her consultative examination, for example, the ALJ noted Dr. Tran's repeated observations that Plaintiff exhibited "decreased effort." AR 17; 19; 271; 273. *See Tonapetyan*, 242 F.3d at 1149 (consultative examiner's observation that claimant showed "poor effort" during examination was a specific and convincing reason for discrediting the claimant's testimony); *Barnhart*, 278 F.3d at 959 (a claimant's "self-

limiting behaviors to impede accurate testing of her limitations supports the ALJ's determinations as to her lack of credibility").

To illustrate Plaintiff's tendency to exaggerate, the ALJ noted his own observation that Plaintiff was able to concentrate for the duration of the fifty-minute hearing, but initially testified that she could concentrate for no more than twenty to thirty minutes at a time.[18]  AR 19; 35; *see* SSR 96-7p ("[i]n instances in which the adjudicator has observed the individual, the adjudicator … should consider any personal observations in the overall evaluation of the credibility of the individual's statements"); *Tonapetyan*, 242 F.3d at 1148 (ALJ's credibility determination may be based, in part, on his personal observations); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Bickell v. Astrue*, 343 Fed.Appx. 275 (9th Cir. 2009) ("[i]nconsistencies and a tendency to exaggerate provide a valid basis for discrediting the testimony of a claimant").

The ALJ further noted that Plaintiff's "poor work history, with only four full substantial gainful activity years in the past relevant fifteen years (since 1994), or her entire life" undermined her credibility.  AR 19, 158; *see Barnhart*, 278 F.3d at 959 ("spotty" work history constitutes a clear and convincing reason for discounting a claimant's testimony).

Finally, the ALJ noted that Plaintiff's "activities of daily living are not fully consistent with her allegations of total disability," thereby undermining her credibility.  AR 19; *see Barnhart*, 278 F.3d at 959 (claimant's "ability to perform various household chores such as cooking, laundry, washing dishes and shopping," among other factors, bolstered "the ALJ's negative conclusions about [her] veracity"); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[e]ven where [the daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally

---

[18] Plaintiff notes that the fact that she took a momentary break in the middle of the hearing undermines the ALJ's reasoning in this regard.  Plaintiff's assertion is not persuasive.  The record indicates that Plaintiff took a brief break to "compose herself" at her attorney's urging, indicating that she was emotional or tearful as opposed to losing concentration.  AR 44-45.

debilitating impairment"); *Orn v. Astrue*, 495 F.3d 625, 639 (2007) (claimant's daily activities that contradict claimant's other testimony vitiate claimant's credibility). The ALJ referenced, among other things, that Plaintiff "is able to provide sole daycare for her four year old child while her other children are at school, which can be quite demanding;" cooks twice a day; does the dishes once a day; drives four to five times a day; shops for food every other week; does other shopping once a month; goes out to eat once a month; and helps her children with homework several times a week. AR 19. The ALJ reasonably concluded that these daily activities were "not fully consistent with [Plaintiff's] allegations of total disability" (for example, her testimony that on account of back pain she could only sit, stand, and walk for very limited stretches at a time and that she had to rest her hands for five to ten minutes each time she gripped or grasped an object for two minutes). AR 19; *see Molina*, 674 F.3d at 1113 ([t]he ALJ could reasonably conclude that Molina's activities, including walking her two grandchildren to and from school, attending church, shopping, and taking walks, undermined her claims that she was incapable of being around people without suffering from debilitating panic attacks"); *Bra*y, 554 F.3d 1219, 1227 (9th Cir. 2009).

In sum, the ALJ's stated reasons for discounting Plaintiff's testimony are specific and convincing, and his credibility finding is free of legal error and supported by substantial evidence in the record. *See Tonapetyan,* 242 F.3d at 1149; *Barnhart*, 278 F.3d at 959.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, Commissioner of Social Security, and against Plaintiff Aracely Guerrero.

IT IS SO ORDERED.

Dated:   **August 26, 2013**                             **/s/ Gary S. Austin**
                                                          UNITED STATES MAGISTRATE JUDGE